IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANEL FRITZ** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 18-3181** |
| v. | : | |
| | : | |
| **UWCHLAN AMBULANCE CORPS, INC.** | : | |
| | : | |
| *Defendant* | : | |

NITZA I. QUIÑONEZ ALEJANDRO, J.                                      MARCH 4, 2020

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Janel Fritz filed this discrimination action, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*, against her former employer, Defendant Uwchlan Ambulance Corps, Inc. ("Defendant"), in which she asserts claims of pregnancy discrimination, gender discrimination, hostile work environment, and retaliation. [ECF 1]. Before this Court are Defendant's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 19], Plaintiff's response in opposition thereto, [ECF 20], and Defendant's reply. [ECF 23]. The issues raised in Defendant's motion are fully briefed and ripe for disposition. For the reasons set forth herein, the motion is granted and judgment is entered in favor of Defendant.

### BACKGROUND

When ruling on a motion for summary judgment, a court must consider the evidence in the light most favorable to the non-movant (here, Plaintiff). *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The relevant facts are summarized as follows:

Plaintiff, a female Emergency Medical Technician/Paramedic ("EMT/P"), was employed by Defendant Uwchlan Ambulance Corps, Inc. at all relevant times. In the complaint, Plaintiff describes instances of negative treatment at work, which she contends were based on her gender and her pregnancy. While Plaintiff references a series of interactions with coworkers and supervisors that she found offensive, the most relevant instances are detailed below.

*Facts Related to Plaintiff's Pregnancy*

In June 2017, Plaintiff was in the third trimester of her pregnancy and requested an accommodation from Defendant in the form of lifting assistance during the remainder of her pregnancy. In response to her request, Defendant assigned a second EMT/P to Plaintiff's shifts.[1] Plaintiff also contends that Defendant's employees repeatedly urged her to begin maternity leave prior to the birth of her child, and prior to the date required and directed by her doctor. When Supervisor John Applegate ("Supervisor Applegate") encouraged Plaintiff to go out on leave earlier than Plaintiff had planned, he told her that he would "save her spot" for twelve weeks. Supervisor Applegate made the following comments to Plaintiff while she was pregnant: 1) Plaintiff's shirt looked like "a tent," 2) Plaintiff looked like she was "ready to pop," 3) Plaintiff should not work too hard because she may "hatch," and 4) Plaintiff should let him know "if [she] hatch[es]."

In July 2017, Plaintiff was informed that she could no longer work at a particular substation for the remainder of her pregnancy because of the late stage of her pregnancy. Plaintiff identifies two other employees who were permitted to continue working at the same substation throughout their pregnancies.

After giving birth, Plaintiff attempted to return to work on September 21, 2017 and Defendant's secretary asked her for a doctor's note indicating that she was able to return to work. A male employee who was absent from work for less than three consecutive days was not required to produce a doctor's note to return to work.

*Facts Related to Plaintiff's Gender*

In July 2017, Matthew Applegate ("Matthew"), a fellow employee and the son of Supervisor Applegate, made a comment about Plaintiff "shoving a tampon in each hole," after which a supervisor told Matthew that the comment was inappropriate. In January 2018, Plaintiff and Matthew were watching television at work and Matthew commented on the size of the on-screen actresses' breasts and how attractive he found them. On another occasion, Plaintiff heard Matthew and

---

[1] This arrangement was a different accommodation than what other pregnant employees had received in the past. It appears that other pregnant employees were given, *inter alia*, the opportunity to request lifting assistance on a case-by-case basis as needed, rather than having an additional employee accompany them consistently for on-demand assistance.

2

other male employees discussing sexual behavior they had videotaped outside of work.

On or around July 31, 2017, Matthew approached Plaintiff and began a work-related discussion about a former dispatch to which Defendant had responded. The conversation became heated and Matthew called Plaintiff a "bitch." In response, Plaintiff told Matthew that she believed he was only able to make such comments without negative consequences because he is the son of a supervisor. Matthew then left, slammed the door, and called Plaintiff an "asshole." Matthew immediately reported what Plaintiff had said to him to Supervisor Emily McCarthy ("Supervisor McCarthy"), who immediately suspended Plaintiff without pay for three days for accusing Matthew of benefiting from nepotism. Plaintiff insisted on receiving, and did receive, written documentation of her suspension before leaving work that day. The Employee Disciplinary Action Notice that Plaintiff received that day indicated that she had engaged in substandard work, insubordination, and unprofessional conduct. More specifically, the notice indicated that Plaintiff "was giving incorrect information to another employee about disciplinary action that she had no knowledge of."

Plaintiff baldly contends that the proffered reason for her suspension was pretextual and baseless, yet continually admits in her filings that she was suspended *because* she made statements about Matthew not being subject to discipline because of his familial relationship with a supervisor. Matthew was not disciplined for his comments toward Plaintiff.

Plaintiff describes other instances where miscellaneous company policies were enforced against her but not against her coworkers. Most of these instances include other females being treated more favorably than Plaintiff and do not in any way suggest that Plaintiff's allegedly less favorable treatment had anything to do with her gender. A few instances where the behavior or treatment had any connection to Plaintiff's gender include: (1) a male employee was permitted to work a double shift and Plaintiff was not permitted to do so; (2) a volunteer commented to Plaintiff, "Nice strong legs, they are ready for bicycling and you should work out [at work] more often."

Plaintiff maintains that throughout her employment, she performed all duties satisfactorily and regularly exceeded the requirements of her position.

**LEGAL STANDARD OF REVIEW**

Federal Rule of Civil Procedure ("Rule") 56 governs the practice of summary judgment motions and provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A fact is "material" if its existence or non-existence might affect the outcome of the case, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena*, 638 F.3d at 196.

The movant bears the initial burden of identifying evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). Once the movant has met its initial burden, the nonmovant must rebut the motion by identifying "some evidence in the record that creates a genuine issue of material fact." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). In doing so, the nonmovant must rely on facts in the record and "cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument[,]" *id*., or on "bare assertions, conclusory allegations[,] or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). If the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" then the court should grant summary judgment for the movant. *Celotex*, 477 U.S. at 322.

**DISCUSSION**

As noted, Plaintiff asserts claims of pregnancy discrimination, gender discrimination, retaliation, and hostile work environment, all in violation of Title VII.[2] In its motion, Defendant

---

[2] Plaintiff's claims, with the exception of her hostile work environment claim, are subject to the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Moody v. Atl. City Bd. of Educ*., 870 F.3d 206, 213 n.11 (3d Cir. 2017); *Moore v. City of Phila*., 461 F.3d 331, 342 (3d Cir. 2006). However, because Plaintiff fails to establish a *prima facie* case for any of her claims, only the first step of the *McDonnell Douglas* framework is analyzed here.

4

argues that there are no genuine disputes of material fact and that Plaintiff's claims fail as a matter of law. For the reasons set forth below, this Court agrees.

*Pregnancy Discrimination Claim*

Title VII, as amended by the Pregnancy Discrimination Act, prohibits discrimination "on the basis of pregnancy, childbirth, or related medical conditions[,]" and requires that women affected by those bases be treated the same, for all employment-related purposes, as non-pregnant persons similar in their ability to work. 42 U.S.C. §§ 2000e(k), 2000e-2-3; *see also Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 363-64 (3d Cir. 2008). To establish a disparate treatment pregnancy discrimination claim, a plaintiff must prove: (1) the employer had knowledge of the pregnancy; (2) the plaintiff was qualified for the job; (3) the plaintiff suffered an adverse employment action; and (4) there is a nexus between the plaintiff's pregnancy and the adverse employment action that raises an inference of discrimination. *Doe*, 527 F.3d at 365. The fourth element is most frequently established by evidence that the plaintiff was treated less favorably than similarly situated employees who are not in the plaintiff's protected class—*i.e*., other non-pregnant employees who are temporarily disabled. *Id*. at 366.

Here, Defendant argues that Plaintiff cannot establish the second, third, or fourth elements of a pregnancy discrimination claim. In response, Plaintiff argues that she suffered adverse employment actions by way of (1) the collective offensive comments made to her by Defendant's employees and (2) her suspension. Notably, Plaintiff does not offer any arguments that she was, indeed, qualified for her job, or that any nexus exists between her pregnancy and her suspension. While Defendant points to evidence indicating Plaintiff became unqualified for her position, and Plaintiff fails to meet her burden to cite any particular parts of materials in the record to establish

---

*See Moore*, 461 F.3d at 342 ("If the employee establishes [a] *prima facie* case . . . the familiar *McDonnell Douglas* approach applies . . . .").

that a genuine dispute of material fact exists regarding the second element, this Court need not address Defendant's second-element argument because the fourth element is dispositive.

As to the third element, an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (citing *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). An adverse employment action also "'must be one that produces a material employment disadvantage.' Modest changes in duties or working conditions, 'even unpalatable or unwelcome ones,' that do not produce a material disadvantage are not adverse actions[.]" *King v. City of New Kensington*, 2008 U.S. Dist. LEXIS 76485, at *27 (W.D. Pa. Sept. 30, 2008) (quoting *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007)) (internal citations omitted). Examples of adverse employment actions include, *inter alia*, "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Berridge v. Nalco.*, 2014 U.S. Dist. LEXIS 11409, at *20 (D.N.J. Jan. 30, 2014) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Based on this definition, Plaintiff's argument that the collective offensive comments made to her by Defendant's employees constitute an adverse employment action is meritless.

The only incident supported by the record that could conceivably constitute an adverse employment action under this definition is Plaintiff's suspension, as Plaintiff argues. Without affirmatively finding that Plaintiff's suspension does constitute an adverse employment action,[3] this Court will proceed to address the fourth element as if her suspension constitutes such an action, since such analysis is dispositive.

---

[3] Because it is unknown to this Court whether Plaintiff's suspension was with or without pay, it declines to affirmatively hold that the suspension was an adverse employment action. *See Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (holding a paid suspension alone cannot constitute an adverse employment action under the substantive provision of Title VII).

Regarding the fourth element (nexus), this Court finds that the record does not contain any evidence to support a nexus between Plaintiff's pregnancy and her suspension. The record clearly reflects, and Plaintiff repeatedly acknowledges, that she was suspended for accusing a coworker of benefiting from nepotism. Although Plaintiff baldly contended in her complaint that the proffered reason for her suspension was pretextual and baseless, she continually acknowledges that she was suspended because of her statements about Matthew not being subject to discipline due to his familial relationship with a supervisor.[4] Because there is no nexus between Plaintiff's pregnancy and her suspension, she cannot satisfy the fourth element of her pregnancy discrimination claim. Therefore, summary judgment is granted in favor of Defendant with respect to Plaintiff's pregnancy discrimination claim.

---

[4] *See*, *e.g*., Compl. at 5 (ECF 1) ("McCarthy suspended Plaintiff because she made a truthful and accurate statement regarding the improper conduct of the son of Defendant Applegate and the factual and accurate statement that said son was not ever subjected to any sanctions for improper conduct solely because of his familial relationship with Defendant Applegate."); *Id.* at 4 ("McCarthy . . . suspended her . . . as a result of her verbal reply to Matthew Applegate's vulgar and intemperate comments."); *Id.* at 11 (in Plaintiff's list of specific grievances; "After he called me a bitch, I told Matt Applegate the only reason he gets what he does it because of who his father is." . . . Supervisor McCarthy "told me, 'pack your stuff and go home. We don't stand for people saying they get what they want because of who their daddy is.'"); Fritz Dep. at 112:25-113:4 (when asked why Supervisor McCarthy suspended Plaintiff, Plaintiff said, "I was suspended because Matt was upset and I think people were offended that I said he was who he was because of who his daddy is."); *Id.* at 112:19-24 (Plaintiff responded affirmatively when asked, "So Emily issued you a suspension for basically insulting Matt Applegate by saying that he was a beneficiary of nepotism; would that be accurate?"); *Id.* at 109:18-22 ("[Supervisor McCarthy] told me that I was suspended for what I said to Matt, that I can't say that people get what they get because of who their daddy is. And that was the extent of it."); Plf. Br. Ex. A at 21-22 (ECF 20-1) (in Verita Investigation Report; "During her interview, Fritz also said that her suspension is an example of how Matthew Applegate is treated more favorably because he is the chief's son."); Plf. Br. at 5 (ECF 20) ("[Plaintiff] voicing complaints regarding instances of nepotism and other untoward conduct."); *Id.* at 9-10 ("[Plaintiff] told [Matthew Applegate] in sum and substance that he was permitted to engage in such behaviors without consequence only because his father is John Applegate . . . . it is not a difficult reach to come to the reasonable conclusion that the suspension was in retaliation for Plaintiff's plausible statement of belief that Matthew Applegate was given a pass on otherwise sanctioned acts and omissions *because of nepotism*.") (emphasis added).

7

*Gender Discrimination Claim*

Title VII also prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). To establish a disparate treatment discrimination claim under Title VII, a plaintiff must prove that: (1) he or she was a member of a protected class; (2) he or she was qualified for the position; (3) he or she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *D'Ambrosio v. Crest Haven Nursing & Rehab. Ctr.*, 755 F. App'x 147, 151-52 (3d Cir. 2018) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)). The fourth element is most frequently shown by evidence that the plaintiff was treated less favorably than similarly situated employees who are not in the plaintiff's protected class. *Jones*, 198 F.3d at 413. In its motion, Defendant argues that Plaintiff cannot establish the third or fourth elements. In her response, Plaintiff appears to make the same argument regarding adverse employment actions under her gender discrimination claim as she made for her pregnancy discrimination claim, and makes other disjointed arguments as to the circumstances that she contends give rise to an inference of gender discrimination.

The same legal principles and analysis delineated in the Pregnancy Discrimination section pertaining to adverse employment actions[5] apply to the adverse employment action element of a gender discrimination claim. Therefore, the only incident that conceivably qualifies as an adverse employment action is Plaintiff's August 2017 suspension. Consequently, the gender discrimination analysis centers on the fourth element: whether the suspension occurred under circumstances giving rise to an inference of discrimination. While the record includes various instances where Plaintiff was not treated equally with her coworkers, the record is devoid of

---

[5] *Supra* pg. 6.

evidence that her *suspension* occurred under circumstances that give rise to an inference of gender discrimination. Plaintiff does not allege, nor does the record reflect, that any male employee ever engaged in similar conduct—*i.e.*, confronting a fellow employee about benefitting from nepotism—and was not suspended or disciplined as a result. Therefore, there is no evidence that Plaintiff was treated less favorably than similarly situated employees outside of her protected class.

While there are alternative avenues, other than establishing the "similarly situated individuals" fact pattern, by which a plaintiff can satisfy the fourth element, Plaintiff does not point to any facts that "in some other way" establish circumstances that could give rise to an inference of intentional gender discrimination. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 274 (3d Cir. 2010). In fact, Plaintiff's own testimony confirms that her gender played no role in her suspension. As previously noted, Plaintiff has repeatedly acknowledged that she was suspended for accusing her coworker, Matthew, of benefiting from and avoiding discipline because of nepotism.[6] Additionally, Plaintiff testified at her deposition that she asked for something in writing to document her suspension "[b]ecause [her husband] was afraid if [she] left that [Defendant] would turn it around and say that [she] abandon [*sic*] [her] shift and that [she] wasn't sent home." Fritz Dep. at 109:24-110:3. Plaintiff did not testify that she sought written documentation because she believed, for instance, that (1) she was actually being suspended because she is a woman, (2) Supervisor McCarthy's stated reason for suspending her was a pretext for discrimination on the basis of her gender, (3) she was confused about why she was being suspended, or (4) she was being treated differently than someone else because of a difference in gender.

Finally, other facts about the circumstances surrounding Plaintiff's suspension do not support any inference of gender discrimination. Plaintiff was suspended by a female supervisor—

---

[6] *See supra* pg. 7.

9

a member of her same protected class. While Matthew was not disciplined for using profanity in his discussion with Plaintiff, his conduct is easily distinguishable from Plaintiff's conduct that led to her suspension. Plaintiff publicly accused a coworker of evading disciplinary action and receiving unwarranted special treatment as a beneficiary of nepotism. Such conduct is entirely dissimilar from the use of profanity. As discussed, this Court finds that the record is devoid of evidence that Plaintiff was treated less favorably than similarly situated male employees and of any facts to indicate that Plaintiff's suspension occurred under circumstances that give rise to an inference of gender discrimination. Therefore, Plaintiff cannot satisfy the fourth element of her gender discrimination claim, and summary judgment is granted in favor of Defendant with respect to this claim.

### *Retaliation Claim*

Plaintiff also asserts a retaliation claim under Title VII/Pregnancy Discrimination Act. Title VII prohibits employers from discriminating against an employee because the employee opposed any unlawful employment practice under Title VII, or because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a retaliation claim, a plaintiff must prove that: (1) he or she engaged in a protected activity under Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection existed between the plaintiff's participation in the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (internal quotations and citations omitted).

Protected activity can include "informal protests of discriminatory employment practices, including making complaints to management." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (internal quotations and citations omitted). "An informal complaint may qualify as

protected activity if it protests what an employee believes in good faith to be a discriminatory practice . . . . Although informal complaints may suffice, the employee's opposition to unlawful discrimination must not be equivocal or vague." *Perry v. Harvey*, 332 F. App'x 728, 732-33 (3d Cir. 2009) (citing *Aman v. Cort*, 85 F.3d 1074, 1085 (3d Cir. 1996) and *Moore*, 461 F.3d at 341-43) (internal quotations omitted). Additionally, "for a complaint to amount to protected activity, it must implicate an employment practice made illegal by Title VII." *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011) (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). In other words, a plaintiff need not have "sent a formal letter of complaint to an employer or the EEOC, but whatever form the complaint to the employer or the EEOC takes, it must specifically allege that discrimination has occurred." *LeBlanc v. Hill Sch.*, 2015 U.S. Dist. LEXIS 2981 at *33-34 (E.D. Pa. Jan. 12, 2015) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)) (internal quotations omitted). "[A] plaintiff must show that she did more than complain of 'unfair treatment in general,' or otherwise make vague reports about perceived slights in the workplace." *Swanger-Metcalfe v. Bowhead Integrated Support Servs., LLC*, 2019 U.S. Dist. LEXIS 58147 at *25 (M.D. Pa. March 31, 2019) (citing *Barber*, 68 F.3d at 701-02 and *Klastow v. Newtown Friends Sch.*, 515 F. App'x 130, 133 (3d Cir. 2013)).

Defendant argues that Plaintiff cannot establish that she engaged in a protected activity or that she suffered any adverse employment action in response to a protected activity. In response, Plaintiff contends that her statement to Matthew during their July 31st encounter constitutes a protected activity, and that her suspension was in retaliation for engaging in that activity— *i.e.*, for making her statement to Matthew. Plaintiff's argument is meritless. As a matter of law, Plaintiff's statement to Matthew does not constitute a protected activity under Title VII. Therefore, although

11

Plaintiff *was* suspended for making her statement to Matthew, this Court finds that her suspension was not for engaging in a protected activity.

As previously noted, a complaint is only a protected activity if it implicates an illegal employment practice—here, gender or pregnancy discrimination—and must specifically allege that discrimination has occurred. *Davis*, *supra* pg. 11; *LeBlanc*, *supra* pg. 11. Plaintiff's *own* description of her statement to Matthew is: "in sum and substance that he was permitted to engage in such behaviors without consequence only because his father is [a supervisor]." Plf. Br. at 9-10 (ECF 20). Plaintiff continued to say that Matthew "was given a pass on otherwise sanctioned acts and omissions because of nepotism." *Id.* at 10. Plaintiff's descriptions are accurate reflections of the record and exemplify precisely why her statement is not a protected activity: Plaintiff complained that Matthew receives more favorable treatment than her and other employees *because of nepotism*. More specifically, Plaintiff complained that Matthew was able to engage in conduct such as calling her a "bitch" and an "asshole" because of who his father is, *not* because he is a man or because she is a woman, *not* because she was pregnant and he was a temporarily disabled non-pregnant employee, or for any other gender-related reason.[7] Since Plaintiff's statement neither complained of gender or pregnancy discrimination (or any other type of discrimination precluded by Title VII), nor specifically alleged that she had suffered either type of discrimination, but rather complained of nepotism, which is not a class of discrimination covered by Title VII, Plaintiff's statement is not a protected activity. Consequently, Plaintiff cannot satisfy the first element of her retaliation claim.

---

[7] It is worth noting that Plaintiff's retaliation claim is clearly made specifically under the Pregnancy Discrimination Act and not regarding Plaintiff's gender more generally. However, since Plaintiff's complaint did not substantively attribute the alleged discrimination to either her pregnancy or her gender, the distinction is inconsequential. In other words, even if Plaintiff meant to make an additional claim for retaliation based on gender discrimination generally, such a claim would fail.

Further, applicable case law does not support the notion that "complaints" made to the alleged offending coworkers *themselves*, as opposed to management, are considered a protected activity. *See Daniels*, *supra* pg. 10 ("informal protests of discriminatory employment practices, including making complaints to *management*.") (emphasis added) (finding plaintiff's complaints made to the offending coworker were not protected activities, but her complaint to an administrator and her filing of two civil actions were protected activities); *Butto v. CJKant Res. Grp., LLC*, 2019 U.S. Dist. LEXIS 39937 at *8-9 (E.D. Pa. March 13, 2019) (finding plaintiff's conversation with offending supervisor directly was not a protected activity); *Robuck v. Mine Safety Appliances Co.*, 2010 U.S. Dist. LEXIS 116871 at *19 (W.D. Pa. Nov. 3, 2010) (finding no protected activity where plaintiff did not allege that he complained of discrimination to his supervisor).[8] Here, Plaintiff did not informally protest any employment practice or make even an informal complaint to a supervisor; she merely confronted a fellow employee about how he was allegedly treated and expressed her opinion that such treatment was unfair. Such circumstances are entirely distinct from the plethora of cases that implicate the "informal protests and complaints" niche of retaliation claims.

As detailed in the foregoing analysis, this Court finds that Plaintiff cannot establish that she engaged in a protected activity or that her suspension was in response to any protected activity. Therefore, she cannot satisfy the first or third elements of her pregnancy-based retaliation claim.[9] Accordingly, summary judgment is granted in favor of Defendant on this claim.

---

[8] *See also*, *LeBlanc*, 2015 U.S. Dist. LEXIS 2981 at *33-36 (while Plaintiff cites this case in support of her argument, the facts are dissimilar. In *LeBlanc*, the court found that a letter to the headmaster and filing a charge with the EEOC were protected activities.)

[9] Or of a gender-based retaliation claim. *See supra* note 6.

*Hostile Work Environment Claim*

"Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 845 (3d Cir. 2016) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S 17, 21 (1993)). In order to establish a gender-based Title VII hostile work environment claim against an employer, a plaintiff must prove that: (1) he or she suffered intentional discrimination because of his or her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in similar circumstances; and (5) *respondeat superior* liability exists. *Hukman v. Am. Airlines, Inc.*, __ F. App'x __, 2019 U.S. App. LEXIS 38813, at *12 n.7 (3d Cir. Dec. 31, 2019) (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017)).

Defendant argues that Plaintiff cannot establish that the alleged discriminatory conduct was sufficiently severe or pervasive, that she was detrimentally affected, or that a reasonable person in similar circumstances would have been detrimentally affected. In her response, Plaintiff does not point to any specific facts in the record to the contrary. This Court finds that Plaintiff has not met her burden to identify "some evidence in the record that creates a genuine issue of material fact," *Berckeley Inv. Group, Ltd.*, 455 F.3d at 201, as to her hostile work environment claim. For that reason, and because analysis of the third element regarding subjective detrimental effect is dipositive, this Court need not address the remaining elements.

In response to Defendant's challenge to the hostile work environment claim, Plaintiff does not cite *any* evidence in the record to support her bald assertion that a hostile work environment existed. In its entirety, Plaintiff's argument is as follows:

> In fact, and in truth, the record as set forth specifically and as referenced in the aggregate here speaks to a work environment that was and is indeed hostile as that

> term is defined in applicable jurisprudence. Again, the components of the record cannot be read in a vacuum and when viewed as a whole the picture that emerges is one of a pervasive course of abhorrent conduct that is legally repugnant and offensive in the extreme to and for any reasonable and prudent person or normal sensibilities. As such, all of the elements of a hostile work environment are made out, at least for the purposes of passing legal muster so as to defeat the instant motion.

Plf. Br. at 12 (ECF 20).

Rule 56 specifically provides that a plaintiff contending that a fact is genuinely disputed must support the assertion by "citing to *particular* parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Further, a district court is not required to undertake an independent search of the record when ruling on a motion for summary judgment; rather, a court need only consider "cited materials." Fed. R. Civ. P. 56(c)(3). Here, as is abundantly clear from Plaintiff's above-cited argument, Plaintiff made little, if any, effort to cite particular parts of materials in the record to support the existence of a hostile work environment or, more specifically, that any alleged discriminatory conduct was sufficiently severe or pervasive as to alter the terms and conditions of Plaintiff's environment. Instead, Plaintiff vaguely states that the record in its entirety establishes all of the necessary elements for a hostile work environment claim. However, "[m]erely labeling comments and conduct as 'abhorrent' and 'legally repugnant' is no substitute for offering record evidence that the environment at Uwchlan Ambulance Corps was 'objectively hostile or abusive.'" Def. Reply Br. at 4 (ECF 23). Plaintiff's above-cited response is insufficient to meet her summary judgment burden.

Moreover, as to subjective detrimental effect, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's

15

employment, and there is no Title VII violation." *Harris*, 510 U.S at 21-22. While there is no requirement that an environment be "psychologically injurious" to a plaintiff in order to establish a hostile work environment claim, in the absence of such evidence, other factors "relevant to determining whether the plaintiff actually found the environment abusive" include whether the environment "detract[ed] from employees' job performance, [or] discourage[d] employees from remaining on the job[.]" *Harris*, 510 U.S at 22-23. "Of course, that a psychological injury is unnecessary does not dispense with the requirement that plaintiff must show she has been detrimentally affected in some manner. 'The subjective factor is crucial because it demonstrates that the alleged conduct injured this particular plaintiff giving her a claim for judicial relief.'" *Hall v. Pa. Dep't of Corr.*, 2006 U.S. Dist. LEXIS 68670, at *28-29 (M.D. Pa. Sept. 25, 2006) (quoting *Spain v. Gallegos*, 26 F.3d 439, 447 n.10 (3d Cir. 1994)). "The mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Weston v. Pa. Dep't of Corr.*, 2001 U.S. Dist. LEXIS 19185, at *12 (E.D. Pa. Nov. 20, 2001) (citing *Harris*, 510 U.S at 21 and *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (internal quotations and citations omitted).

Contrary to what the case law requires, Plaintiff testified in her deposition that her job performance was never affected by any of the alleged discriminatory conduct.[10] Plaintiff's testimony is consistent with her assertions in her pleadings that she "continued to provide strong and stellar performance and patient care . . . during the entire time of her employment by and with Defendant Uwchlan" and "regularly exceeded the base requirements of her position of employment." Compl. at 2, 6 (ECF 1). At most, Plaintiff testified that she was offended by a

---

[10] Fritz Dep. at 67:18-68:8 (Q. "After the [June 10 and June 30 comments and the impression John Applegate gave you], did you change the way in which you did your work at all?" A. "No."); *Id.* at 73:25-74:4 (Plaintiff answered that some allegedly discriminatory comments that she did not appreciate did not affect the way she performed her duties as a paramedic).

16

particular comment made by Supervisor Applegate comparing Plaintiff's shirt to a tent while she was pregnant, and that she became "a little more guarded," "reserved," and "quiet" with her coworkers because she learned that she needed "to mind [her] Ps and Qs." Fritz Dep. at 68:5-8; 74:5-13, 19-24. Plaintiff taking offense to her supervisor's comment, however, "does not sufficiently affect the conditions of employment to implicate Title VII." *Weston*, 2001 U.S. Dist. LEXIS 19185 at *12 (citing *Harris*, 510 U.S at 21 and *Meritor Sav. Bank FSB*, 477 U.S. at 67). Plaintiff's testimony that she became more mindful of her own conduct at work and interacted with her peers in a more reserved manner does not amount to evidence of altered employment conditions. Further, neither party cited any facts in the record to suggest that Plaintiff suffered psychological harm or other negative effects, such that her job performance diminished, that she was discouraged from remaining at her position, or that the alleged discrimination altered the conditions of her employment. *See*, *e.g.*, *Obergantschnig v. Saw Creek Estates Cmty. Ass'n*, 2013 U.S. Dist. LEXIS 150016, at *24 (E.D. Pa. Oct. 18, 2013) (finding no subjective detrimental effect where plaintiff did not show how the alleged discriminatory comments "impugned the integrity of her job performance."); *Weston*, 2001 U.S. Dist. LEXIS 19185 at *43 (finding the same where the alleged discriminatory comments "did not unreasonably interfere with plaintiff's work performance").

This Court finds that Plaintiff (1) cannot establish that the alleged discriminatory conduct had a detrimental effect on her and (2) has failed to meet her burden at summary judgment to identify any evidence in the record creating a genuine issue of material fact as to any of the elements of a hostile work environment claim. Therefore, summary judgment is granted in favor of Defendant on Plaintiff's hostile work environment claim.

**CONCLUSION**

As the United States Supreme Court has continuously held, Title VII "does not set forth a general civility code for the American workplace." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). For the reasons stated herein, Plaintiff's claims fail as a matter of law and Defendant's motion for summary judgment is granted. Accordingly, judgment is entered in favor of Defendant and against Plaintiff on all counts of the complaint. An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.